JOHN W. HUBER, United States Attorney (#7226)
LAKE DISHMAN, Assistant United States Attorney (#16274)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>IVAN SANCHEZ (a/k/a IVAN SANCHEZ SAMBRANO, a/k/a ZANCHEZ SAMBRANO SANCHEZ, a/k/a IVAN SANCHEZ LAMAS),<br><br>Defendant. | Case No. 1:18-cr-00107-RJS-BCW<br><br>UNITED STATES'S RESPONSE TO MOTION FOR APPEAL OF DETENTION ORDER AND POSITION REGARDING MR. SANCHEZ'S CONTINUED DETENTION<br><br>Chief Judge Robert J. Shelby |

The United States of America responds to Mr. Sanchez's Motion for Appeal of Detention Order and Request for Hearing. Additionally, because the Court reviews the matter of detention *de novo*, the United States also provides the following information in support of its position Mr. Sanchez should remain detained.

## I. RESPONSE TO MOTION FOR APPEAL

The United States recognizes a defendant's opportunity to appeal an Order of Detention. *See* 18 U.S.C. § 3145(c). The District Court reviews a Magistrate's detention order *de novo*. DUCrimR 57-16(a)(1); *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

Contrary to Mr. Sanchez's assertion (*see* ECF No. 19 at 1), the United States's burden of proving a defendant's risk of flight is by a preponderance of the evidence. *Cisneros* at 616.

Mr. Sanchez asserts the U.S. District Court for the Southern District of California detained Mr. Sanchez because he lied to his California probation officer about his actual residence. *See* ECF No. 19 at 2. That is true, but it is not the only reason. That Court found that by a preponderance of the evidence no condition or set of conditions reasonably assured the Court that Mr. Sanchez would appear. *See* ECF No. 3-1 at 2. It based its decision on Mr. Sanchez's prior criminal history, his participation in criminal activity while on probation, parole, or supervision, his lack of stable employment and residence, and his untruthfulness to his state probation officer. ECF No. 3-1 at 2-3.

Mr. Sanchez also represents to the Court that his girlfriend's residence would be acceptable to the Court. *See* ECF No. 19 at 2. For reasons stated below, the Court should not let Mr. Sanchez reside with Ms. Delgado.

## II. THE UNITED STATES SEEKS DETENTION

The United States argues that no condition or set of conditions will reassure Mr. Sanchez's appearance. The United States's offers the following facts in support of that argument. These have been organized into the factors listed in 18 U.S.C. § 3142(g).

### A. Nature and Circumstances of the Crime

Although Mr. Sanchez's crime is not one of violence nor poses a threat to the physical safety to a person or the community, the way Mr. Sanchez conducted his crime is illustrative of

why no condition or set of conditions will reasonably assure the court of Mr. Sanchez's future appearance.

The Grand Jury indicted Mr. Sanchez for stealing property from the United States Postal Service through an elaborate ruse over the past ten years across seven states: Utah, California, Arizona, Nevada, New Mexico, Oregon, and Texas. *See* [ECF No. 1](); Exh. 1. Usually, Mr. Sanchez first identifies for sale or vacant homes near the post offices he plans on visiting. Next, he fraudulently obtains a State Identification Card showing his residence at one of the addresses he previously identified. *See* Exh. 2.

Mr. Sanchez then orders checks from a third-party vendor. *See* Exh. 3. He gives the vendor false information to print on the checks: a false residential address he had previously identified and a false bank account number to an account that is either closed or non-existent. *Id.* He tells the vendor to rush the order and ship the checks overnight. *Id.* Because it is an express shipment, he tracks the package and either intercepts it upon delivery at the unoccupied residence or contacts the carrier to divert it for pickup at a branch location.

Once Mr. Sanchez has the checks, he systematically goes from post office to post office purchasing numerous 100 stamp rolls with the fraudulent checks. *See* Exh. 4. Because he has a local address, the post office will accept what it thinks is a valid, in-state check. After a few days, he leaves the state with thousands of dollars worth of postal stamps. He then fences the postal stamps and repeats the cycle by targeting the post offices in a different location. *See* Exh. 1.

The Court should focus on three key aspects of the nature and circumstances of his crime when weighing the question of detention. First, Mr. Sanchez regularly and with relative ease

obtains legitimate identification cards from various states using false and fraudulent information. Second, his criminal activity provides him with a substantial source of income not tied to employment or a specific location. Third, he does not limit his check kiting to only the post office but at other local businesses too, such as Harmon's Grocery Stores (where he also paid for large amounts of stamps with the fraudulent checks in December 2017. *See e.g.* Exh. 5. As such, Mr. Sanchez's criminal conduct charged in this case demonstrates his capability to and propensity for living a nomadic life without the need of either legitimate income or government identification, factors which increase Mr. Sanchez's risk of nonappearance. Potential conditions placed upon Mr. Sanchez by the Court would not effectively manage or mitigate this risk.

**B. Weight of the Evidence**

The evidence against Mr. Sanchez is very strong. The Postal Service's surveillance equipment captured video of most of Mr. Sanchez's encounters. The videos show Mr. Sanchez in the same shirt, sunglasses, and black folio containing the checkbook. Each of these encounters match postal records of where and when each fraudulent check was passed, linking the videos of Mr. Sanchez to the fraudulent checks. *See* Exh. 6. Each check has Mr. Sanchez's name on it with the false address and false bank account as well as the bank's rejection of the check when the U.S. Postal Service attempted to collect the funds. *See, e.g.* Exh. 2. Finally, the checks correspond to the orders from the vendor, also linked to Mr. Sanchez. Because the case against Mr. Sanchez is so strong, it increases the likelihood of Mr. Sanchez's conviction for the charged crimes, thus lowering his incentive to reappear before the Court when required, regardless of the conditions the Court could place upon him.

**C. History and Characteristics of Mr. Sanchez**

Mr. Sanchez's history and personal characteristics do not suggest that the Court could reasonably assure Mr. Sanchez's appearance through conditions of release. As discussed above, Mr. Sanchez possesses the unique talents, skills, and inclination to live a nomadic life free of legitimate income or stable residence, which life he has been living for the past decade.

Mr. Sanchez's criminal history does not offer the Court much solace either. It shows he has a history of misusing or falsifying identifications, drug and alcohol abuse, failures to follow Court orders or restrictions, and committing crimes while on supervision. See Exh. 7.

- 2000: Arrested for alcohol possession as a minor (disposition unknown). *Id.* at 5.
- 2001: Arrested with possession of controlled substance (prosecution declined). *Id.*
- April 2004: Cited for giving a false ID to peace officers in California (disposition unknown). *Id.*
- September 2004: Arrested for DUI with alcohol or controlled substance (prosecution declined) and use or under influence of controlled substance (disposition unknown). *Id.* at 6.
- March 2005: Convicted of possession of controlled substance; given three years of probation. *Id.* at 7. From this time forward, Mr. Sanchez is either incarcerated or on probation.
- October 2005: Court issues a warrant for failure to appear. *Id.* at 7-8.
- 2006: 15 days in jail for unlawful use of a driver's license. *Id.* at 8-9.
- 2007: Convicted of DUI. *Id.* at 9.
- February 2008: Convicted of false impersonation; charges of DUI dismissed with plea. *Id.* at 11.

- January 2009: Charged with passing checks with insufficient funds and DUI (dispositions unclear). *Id.* at 11-12.

- October 2009: Charged with disorderly conduct related to intoxication with drugs or alcohol (dismissed in furtherance of justice). *Id.* at 12.

- 2011: Convicted of DUI by alcohol or drugs; obstruction charge dismissed with plea. *Id.* at 12-13.

- 2012: Charged with disorderly conduct related to intoxication with drugs or alcohol (disposition unclear). *Id.* at 13-14.

- 2013: Convicted of obstruction to a peace officer. *Id.* at 15-16.

- 2014: Convicted of violating the terms of probation with a firearm. *Id.* at 14.

- 2015: Sentenced to three years of probation. *Id.* at 17.

- 2016: Spends one year in jail followed by three years of probation. *Id.* at 18.

He also has a history of violence. Id. at 7, 10, 13, and 15.

Mr. Sanchez lacks important ties that denote stability. He has no ties to Utah other than his crime. He is not a resident of Utah. He lied to his probation officer about living with his parents. He has ties to Mexico as he was arrested in this case at the border crossing in California while returning from Mexico.

Taken altogether, the various aspects of Mr. Sanchez's life demonstrate a remarkable risk that no condition or conditions would assure his appearance before the Court if released.

//

## III. MR. SANCHEZ SHOULD NOT BE ALLOWED TO RESIDE WITH MS. DELGADO

The United States vehemently disagrees with Mr. Sanchez's assessment that Ms. Delgado's residence should be acceptable for the court. Mr. Sanchez omits some key facts that are crucial to the Court's calculus.

First, Ms. Delgado and Mr. Sanchez have worked together to commit the crime Mr. Sanchez is charged with in the present case. In 2008, Ms. Delgado began the same fraud on the U.S. Postal Service as Mr. Sanchez at approximately the same time in California. During the period between November 2008 and January 2009, Mr. Sanchez and Ms. Delgado passed approximately $16,000 and $14,900 in bad checks, respectively. In January 2009, law enforcement caught Mr. Sanchez using Ms. Delgado's black Isuzu Trooper to perpetuate his fraud. When interviewed, he denied knowing her, despite the fact that in the car there was a torn check from Ms. Delgado to Mr. Sanchez. Later, investigators learned that Ms. Delgado was Mr. Sanchez's girlfriend.

In April 2013, Mr. Sanchez and Ms. Delgado reappeared in Arizona, again passing bad checks at various post offices. At this time, Mr. Sanchez and Ms. Delgado were no longer in a romantic relationship together. Mr. Sanchez drove Ms. Delgado's gray BMW from California with her and others in the car. He paid cash for their hotel room. A lawful search of the hotel room and car found fraudulent checks and over $7,000 in U.S. Postage Stamps. Post Office surveillance caught Ms. Delgado passing bad checks for U.S. Postage Stamps at several area post offices. Later that year, Ms. Delgado received a three-year protective order against Mr. Sanchez.

A review of the fraudulent check orders from the vendor shows Mr. Sanchez and Ms. Delgado ordering checks from the same IP addresses several times: July 2008, February 2015,

and January and February 2016. See Exh. 9. Mr. Sanchez's July 2012 order uses Ms. Delgado's email address and phone number she used for her July 2012 order. Id. Ms. Delgado's email address for her 2013 order is "sanchezerika57." Id. Between 2008 and 2016, Ms. Delgado obtained over $73,000 in postage stamps by passing bad checks in California and Arizona. See Exh. 10.

Given Ms. Delgado's history of collaborating with Mr. Sanchez to commit the crime charged in this case for almost a decade, Mr. Sanchez should not be allowed to reside with her.

## **CONCLUSION**

Because of the nature and circumstances of Mr. Sanchez's alleged crime, the overwhelming strength of the evidence against him, his history and characteristics, and his insistence that he should live with an individual with whom he collaborated to commit the crime, the United States respectfully requests that the Court find there is no condition or conditions that would reasonable assure the appearance of Mr. Sanchez by a preponderance of the evidence.

DATED this 9th day of April, 2019.

        JOHN W. HUBER
        United States Attorney

        */s/Lake Dishman*
        LAKE DISHMAN
        Assistant United States Attorney